UNITED STATES of America,
Plaintiff-Appellee,

v.

James Waldo McCORMICK, Defendant-
Appellant.

No. 13653.

United States Court of Appeals
Seventh Circuit.

Oct. 12, 1962.

Rehearing Denied Nov. 19, 1962.

Edward J. Calihan, Jr., Anna R. Lavin, Chicago, Ill., for appellant.

James P. O'Brien, U. S. Atty., Robert S. Atkins, Asst. U. S. Atty., Chicago, Ill., for appellee; John Peter Lulinski, Asst. U. S. Atty., of counsel.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

James Waldo McCormick, defendant, has appealed from a judgment of the district court convicting him, following a trial by the court without a jury, of viola-

tion of 15 U.S.C.A. § 1172 and 18 U.S.C. § 371, as charged in two counts of an indictment. The court committed him for imprisonment.

Count II charged that defendant and John Earl Wilson unlawfully transported from Chicago, Illinois to Hagerstown, Maryland a gambling device, to-wit: A Mills AQ Bell slot machine, serial No. 21387, the state of Maryland not then having in effect any law providing for the exemption of that state or the city of Hagerstown from the provisions of 15 U.S.C.A. § 1172; in violation of said section and 18 U.S.C. § 2.[1]

In count I, the same defendants were charged with an unlawful conspiracy with each other and with James Bernard Sutton, to commit offenses in violation of said § 1172;[2] that is to say, that they conspired with each other and Sutton to unlawfully transport from Chicago, Illinois to Chambersburg, Pennsylvania, and to Hagerstown, Maryland, certain gambling devices, referred to as slot machines, as to which the state of Pennsylvania had not enacted any law providing for the exemption of said state or city of Chambersburg from the provisions of § 1172, and as to which the state of Maryland had not enacted any law for such exemption for said state or the city of

Hagerstown; that, in furtherance of said conspiracy, the co-conspirators committed certain overt acts;[3] in violation of said § 1172.

1. It is the position of defendant that the evidence will not sustain his conviction as to either count. He contends that the proof does not establish him a co-conspirator as alleged in count I, nor an aider and abettor as alleged in count II.

Evidence tending to establish the following facts appeared upon the trial of this case.

John Earl Wilson, his co-defendant, was engaged in the business of repairing and reconditioning slot machines at Chicago, Illinois for 33 years, and did business under the name of John's Novelty Company. According to Wilson, he and defendant had known each other for a number of years. James Sutton, the unindicted co-conspirator, was employed by Wilson in the year 1957, which employment continued until the end of 1959, principally in connection with the assembly of slot machine cabinets. Sutton testified on behalf of the government. In June, 1958, a letter was received by Wilson from defendant at John's Novelty Company, signed "WMC". This letter, containing "a pretty good order", was

---

1. 18 U.S.C.A. § 2 classifies as a principal one who aids and abets the commission of an offense against the United States.

2. Said § 1172 provides:
   "It shall be unlawful knowingly to transport any gambling device to any place in a State, the District of Columbia, or a possession of the United States from any place outside of such State, the District of Columbia, or possession: *Provided*, That this section shall not apply to transportation of any gambling device to a place in any State which has enacted a law providing for the exemption of such State from the provisions of this section, or to a place in any subdivision of a State if the State in which such subdivision is located has enacted a law providing for the exemption of such subdivision from the provisions of this section. * * *"

3. 1. That on or about June 10, 1959, James Bernard Sutton transported approximately ten (10) gambling devices

from Chicago, Illinois, to Chambersburg, Pennsylvania.
   2. That on or about August 4, 1959, at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, James Bernard Sutton loaded fourteen (14) gambling devices, sometimes referred to as slot machines, in a station wagon, and drove said station wagon and machines from Chicago, Illinois, to Chambersburg, Pennsylvania.
   3. That on or about August 6, 1959, James Bernard Sutton delivered a sum of money to James Waldo McCormick in Chicago, Illinois, in the Northern District of Illinois, Eastern Division.
   4. That on or about September 11, 1959, James Bernard Sutton delivered to Railway Express Agency, Inc., a gambling device, to wit, a Mills QT Bell Slot Machine, in Chicago, Illinois, in the Northern District of Illinois, Eastern Division, for shipment to Hagerstown, Maryland.
   In violation of Section 1172, Title 15 U.S.C.A., and Section 371, Title 18 U.S.C.

answered by Sutton at Wilson's direction whereby Wilson proposed a sale to McCormick of ten or twelve slot machines. This letter was sent to 1721 Philadelphia Avenue, Chambersburg, Pennsylvania.

Shortly thereafter, Wilson told Sutton they had "received an OK on the order." On July 10, 1958, Wilson, in the presence of Sutton, spoke on the telephone to McCormick at Chambersburg and said "We are on our way." These machines were placed in a station wagon and camouflaged by fishing equipment and a boat so as to give the appearance that the car's occupants were on a vacation. Wilson, having notified McCormick by phone, drove with Sutton from Chicago, Illinois to Chambersburg, Pennsylvania, where the slot machines were unloaded at McCormick's warehouse in back of his residence and payment in cash was made therefor. At that time, defendant pointed to some old machines on his garage floor and asked Wilson if he could put them in working order. Because they were unable to work on the machines for lack of proper tools, Wilson said that they would return later.

About September 20, 1958, Wilson and Sutton drove from Chicago to Chambersburg with 10 or 12 slot machines, which were unloaded in defendant's warehouse and paid for by him. The next day they repaired all but 10 of the old machines, and these 10 they took to Chicago, completed their repairs in November, returned them to defendant at Chambersburg, and were paid in cash.

Sutton then brought from Chicago 18 more slot machines to defendant at Chambersburg, in late November or early December 1958. These machines had been worked on by Sutton and Wilson at the John's Novelty Company.

In March, 1959, Wilson proposed a sale to defendant of 10 slot machines and a few days later Wilson showed Sutton a check drawn on defendant's bank account for half the purchase price. This check was endorsed by Wilson and part of the proceeds was deposited in the account of John's Novelty Company and the remainder in that of Sutton at a Chicago bank.

About June 10, 1959, these 10 machines were transported by Sutton in an automobile from Chicago, Illinois to Chambersburg, where they were delivered to defendant, who paid some cash to Sutton. Defendant sent back 5 machines for trade-in and 5 for rebuilding and repair.

In July, 1959, defendant was contacted by Sutton on behalf of Wilson, who proposed a sale of 9 used Ace machines for $195 each. Defendant accepted and in the first week in August the 9 Ace machines were delivered to defendant with 5 other slot machines, at his home in Chambersburg, for which defendant paid in bills of $100 denomination. The next day defendant gave Sutton 5 trade-ins and a little QT machine to take back to Chicago for repair, directing that it be returned, when repaired, to R. L. Horne, Hagerstown, Maryland. On September 11, 1959 Sutton telephoned to defendant and told him the QT machine was on the way. He took it to the express office in Chicago and addressed it to Mr. Horne as directed. He mailed the express receipt via air mail to defendant. This machine was delivered to defendant by the Hagerstown express office, which took a receipt signed by defendant in the name of R. L. Horne.

In Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, the court said:

"* * * Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances.'"

To the same effect is United States v. Randall, 7 Cir., 164 F.2d 284, 288 (1947).

While it has been said that a criminal conspiracy is rarely susceptible of direct and positive proof, it is well-settled that it may be established by circumstantial evidence. Nilva v. United States, 8 Cir., 212 F.2d 115, 121 (1954), cert. denied 348 U.S. 825, 75 S.Ct. 40, 99 L.Ed. 650. To the same effect is Blumenthal v. United States, 8 Cir., 88 F.2d 522, 531 (1937).

■ We are convinced that the record contains evidence that defendant, as charged in count I, conspired with Wilson and Sutton to transport slot machines between Chicago, Illinois and Chambersburg, Pennsylvania and Hagerstown, Maryland. He was with them an active participant in an illegal operation.

2. As to count II, defendant contends that it was impossible for him to have participated in the alleged unlawful transportation from Chicago, Illinois to Hagerstown, Maryland, of the gambling device described as a Mills AQ Bell slot machine, serial No. 21387, because his knowledge of the proposed act came after the crime had resulted. It is urged that defendant's only act was picking up the machine at Hagerstown, Maryland, at the conclusion of the interstate transportation charged in the indictment, and that the offense, if any, had then *been* committed. However, as hereinbefore indicated, *ante* 4, in August 1959, defendant directed Sutton to return this machine to R. L. Horne, Hagerstown. Thereupon Sutton made shipment thereof by express to Horne, sent the express receipt to defendant by air mail and called defendant and said that the machine was on its way. The machine was delivered by the express office to defendant, who receipted therefor in the name of R. L. Horne.

The evidence shows that defendant actively participated in this venture and that it was he who caused the machine to be shipped in interstate commerce.

■ 3. Defendant admits that the proof demonstrates that a Mills QT Bell slot machine was transported but insists that, inasmuch as count II charged transportation of a Mills AQ slot machine, there was a fatal variance.

Prior to the trial the government furnished a bill of particulars, on defendant's motion, stating:

" * * * The transportation of a gambling device, to wit, a Mills QT Bell Slot Machine referred to in one of the overt acts of Count One of this Indictment is the same transportation of a gambling device, namely a Mills QT Bell Slot Machine, charged in Count Two of this Indictment."

There is no evidence in the record that any machine bearing the letters AQ was ever manufactured. While the above-quoted language from the bill of particulars makes no reference to a Mills *AQ* Bell Slot Machine and therefore involves itself in some awkward obscurity, it is reasonably clear that its author was attempting to say that both counts of the indictment meant to refer to the same device and that was a Mills QT Bell Slot Machine.

■ Our inquiry is properly limited to "whether there has been such a variance as to 'affect the substantial rights' of the accused." Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314. We hold that the variance in no way affected the substantial rights of defendant.

■ 4. In seeking a reversal, defendant also contends that there was a complete failure of proof as to nonexistence of the exemption provisions charged in each count. He refers to the allegations in the indictment that the state of Pennsylvania had not enacted or had in effect any law providing for the exemption of said state or the exemption of the city of Chambersburg in said state from the provisions of Section 1172, Title 15 U.S. C.A., and that the state of Maryland, as well as the city of Hagerstown, had enacted no such exemption. No evidence was adduced by either the government or the defendant as to the existence or non-existence of such legislative exemption. However, the government calls our attention to the fact, of which we take judicial notice, that the state of Pennsylvania then had in effect a statute making the possession of slot machines illegal.[4] In that state it has been held that this

4. 18 Pennsylvania Statutes, § 4603 provides:

"Whoever maintains any gambling device or apparatus, to win or gain money or other property of value, or aids, assists or permits others to do the same * * * is a common gambler, and guilty of a misdemeanor."

statute applied to slot machines stored in a barn. Commonwealth v. Cancillieri, 166 Pa.Super. 1, 70 A.2d 669. In view of this statutory prohibition of slot machines, we believe that a reasonable inference may be drawn that there was no law in effect in Pennsylvania providing for the exemption thereof in the state or any part thereof.[5] Nothing in the record before us conflicts with this inference.

As to the question as to whether the state of Maryland or the city of Hagerstown, Maryland, had enacted an exemption in favor of slot machines, we take judicial notice of the Annotated Code of Maryland (1957), article 27, § 237 et seq., which in detailed language prohibits gambling devices. While it is true that §§ 247 et seq. grant exemptions to various bona fide fraternal, religious, patriotic, educational and charitable organizations in certain named counties, none of these exemptions applies to the use of slot machines by persons and at no place is Washington County, in which Hagerstown is located, mentioned except for bingo games.

We conclude that the transactions involving the machines sent to Chambersburg, Pennsylvania and Hagerstown, Maryland were not exempt from the operation of § 1172. Cf. North Beach Amusement Company v. United States, 4 Cir., 240 F.2d 729.

5. No motion was made before trial to quash the search warrant which had been issued and served in this case or to suppress the evidence seized thereby. During the trial of the case at bar, defendant moved to suppress the evidence seized by agent Grabham of the Federal Bureau of Investigation under such a warrant issued on September 14, 1959 by a United States commissioner.

In this warrant, the commissioner recited:

"Affidavit having been made before me by Richard H. Grabham that he (is positive) that (on the prem-

ises known as) Warehouse behind premises at 1721 Philadelphia Avenue, Chambersburg, Pa. in the Middle District of Pennsylvania there is now being concealed certain property, namely Mills 'QT' slot machine, serial number, 21387, located on base of said machine, and contained in cardboard carton, with trademark 'Container Corporation of America', and addressed to R. L. Horn, 816 West Church Street, Hagerstown, Maryland, from H. R. Brown, 4401 North Dover Street, Chicago, Illinois, which is known to have been transported from via Railway Express from Chicago, Illinois to Hagerstown, Maryland, and from Hagerstown Md. to Chambersburg, Pa. in McCormick's automobile, in violation of U. S. Code Title 15, Section 1172 and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the (premises) above described and that the foregoing grounds for application for issuance of the search warrant exist."

The warrant then commanded a search pursuant thereto, which, according to the return executed by Grabham, was made at 7:45 P.M. on the date of issuance of the warrant.

Defendant contends that there was not probable cause for believing the existence of the grounds on which the warrant was issued, although he does not deny that Grabham in an affidavit stated that he was positive that

"* * * (on the premises known as) 1721 Philadelphia Ave., Chambersburg, in warehouse located at the rear of said premises in the Middle District of Pennsylvania, there is now being concealed certain property, namely Mills 'QT' slot machine, serial number, 21387, located on base of said machine and contained in cardboard carton, with trademark 'Container Corporation of America' and addressed to R. L. Horn, 816

---

5. Cf. McKelvey v. United States, 260 U.S. 353, 356, 43 S.Ct. 132, 67 L.Ed. 301 (1922), and United States v. Sutter, 7 Cir., 160 F.2d 754 (1947).

West Church Street, Hagerstown, Maryland, from H. R. Brown, 4401 North Dover Street, Chicago, Illinois to Hagerstown, Maryland, and from Hagerstown, Maryland to Chambersburg, Pa. in McCormicks automobile, in violation of U. S. Code Title 15, Section 1172

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

"'Affiant received information from Chicago Office of the F. B. I. that F. B. I. Agent's were present when the above slot machine was shipped via Railway Express and placed proper identification upon said machine and package, and that F. B. I. Agents were present at Hagerstown, Maryland on September 14, 1959, and observed receipt of said slot machine in its container at the Railway Express Office at Hagerstown, Md., and observed James W. McCormick placing said container in the trunk of his automobile and transporting it to Chambersburg, Pa., where he placed it within above described premises.'"

Defendant contends that the information relied on by Grabham is hearsay, relying on Davis v. United States, 5 Cir., 35 F.2d 957 (1929), and Siden v. United States, 8 Cir., 9 F.2d 241, 244 (1925).

■ When the application for the search warrant was made to the commissioner, Grabham's affidavit asserted in substance a series of acts involving agents of the Federal Bureau of Investigation in several geographic points in the United States. In the functioning of an organization such as the Federal Bureau of Investigation, it is reasonable to assume that its agents in one locality must rely upon information communicated to them by agents of the same organization operating in other localities in the performance of their official duties. We refuse to hold that such information, when communicated in the course of official business by the agents among themselves, is excluded by the hearsay rule, so as to require the quashing of a search warrant issued upon the affidavit of one of the agents setting forth his reliance upon such information. Our position is in harmony with the modern view as to the use of hearsay evidence to support the issuance of a search warrant, announced in Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960):

"We conclude therefore that hearsay may be the basis for a warrant. We cannot say that there was so little basis for accepting the hearsay here that the Commissioner acted improperly. The Commissioner need not have been convinced of the presence of narcotics in the apartment. He might have found the affidavit insufficient and withheld his warrant. But there was substantial basis for him to conclude that narcotics were probably present in the apartment, and that is sufficient. * * *"

Grabham's affidavit reveals that his information was such that he had a right to be positive that the QT machine was located in defendant's warehouse, as he swore.

We are not now concerned with hearsay evidence offered on a trial of the issue of guilt. What we say is limited to the court's hearing on defendant's motion to suppress the evidence seized on the warrant.

■ When the search was made, Grabham placed defendant under arrest and several other machines were found. Defendant contends that it was error to seize them. However, Grabham already had information that 14 slot machines had arrived from Chicago, and, under the circumstances, he had probable cause to believe that these machines had been transported in interstate commerce and were therefore subject to seizure. They were subject to seizure when found incidentally to the search of the warehouse under the search warrant. Harris v. United States, 331 U.S. 145, 155, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), and Taglavore v. United States, 9 Cir., 291 F.2d 262, 265 (1961).

We hold that the search warrant was valid, the slot machines introduced in evidence were lawfully seized, and the motion to suppress was properly denied.

For the reasons which we have stated, the judgment of the district court is affirmed.

Judgment affirmed.