Giacomo VENTRESCA, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

No. 6157.

United States Court of Appeals First Circuit.

Nov. 26, 1963.

Matthew R. McCann, Worcester, Mass., with whom Maher, McCann & Talcott, Worcester, Mass., was on the brief, for appellant.

William J. Koen, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., was on the brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

The defendant, Giacomo Ventresca, appeals from a judgment of conviction of the United States District Court for the District of Massachusetts for possessing and operating an unlawful still in violation of the Internal Revenue Code and for conspiracy to do so.[1]

The defendant was arrested in his home on September 1, 1961 by Investigators attached to the Alcohol and Tobacco Tax Division of the Internal Revenue Service who were executing a warrant to search for an illicit still. The Investigators found and seized a still, along with other apparatus used in the distilling process and a large quantity of non-tax paid liquors. Some of the seized objects were introduced in evidence against the defendant at the trial.

Prior to trial the defendant filed a motion for the return of seized property and the suppression of evidence obtained through the execution of the search warrant. After receiving evidence on the motion, the district court ruled that the affidavit was sufficient under the test promulgated by the Supreme Court in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Further, the court ruled that the facts in the affidavit constituted probable cause

---

1. The defendant was convicted on an eight count indictment for violation of 26 U.S.C. §§ 5171(a), 5173(a), 5602, 5179 (a), 5222(a) (1), 5205(a) (2), 5686, 5681 (a) (1958) and on a one count indictment for violation of 18 U.S.C. § 371 (1958).

and the warrant described the things to be seized with sufficient particularity. Ordered suppressed as evidence, however, were a telephone book, desk directory and various papers taken from a box on Ventresca's bedroom bureau and from his trouser pocket on the ground that they were mere evidence and, therefore, not within the provision of Rule 41(b) (2) of the Fed.R. of Crim.P.

2. "AFFIDAVIT FOR SEARCH WARRANT
"BEFORE W. ARTHUR GARRITY, WORCESTER, MASSACHUSETTS
"The undersigned being duly sworn deposes and says:
"That he has reason to believe that on the premises known as a one-family light green wooden frame dwelling house located at 148½ Coburn Avenue, Worcester, occupied by Giacomo Ventresca and his family, together with all approaches and appurtenances thereto, in the District of Massachusetts, there is now being concealed certain property, namely an unknown quantity of material and certain apparatus, articles and devices, including a still and distilling apparatus setup with all attachments thereto, together with an unknown quantity of mash, an unknown quantity of distilled spirits, and other material used in the manufacture of non-tax-paid liquors, which are being held and possessed, and which have been used and are intended for use, in the distillation, manufacture, possession, and distribution of non-tax-paid liquors, in violation of the provisions of 26 USC 5171(a), 5173, 5178, 5179(a) 5222(a), 5602, and 5686.
"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:
"SEE ATTACHED SHEET
(s) WALTER A. MAZAKA
Investigator, Alcohol and Tobacco Tax Div.,
Internal Revenue Service
"Sworn to before me, and subscribed in my presence, August 31st, 1961
(s) W. ARTHUR GARRITY
United States Commissioner
"Based upon observations made by me, and based upon information received officially from other Investigators attached to the Alcohol and Tobacco Tax Division assigned to this investigation, and reports orally made to me describing the results of their observations and investigation, this request for the issuance of a search warrant is made.
"On or about July 28, 1961, about 6:45 P.M., an observation was made covering

The principal question raised by the defendant is the sufficiency of an affidavit signed by one Walter A. Mazaka, an Investigator attached to the Alcohol and Tobacco Tax Division of the Internal Revenue Service, which affidavit was the sole evidence upon which the search warrant was issued.

The affidavit is set out in the margin.[2] It alleged in substance that Mazaka had

a Pontiac automobile owned by one Joseph Garry. Garry and one Joseph Incardone put thirteen bags of sugar into the car. These bags of sugar weighed sixty pounds each. Ten such bags were put into the trunk, and three were placed in the rear seat. Those in the rear seat were marked 'Domino.' The others appeared to have similar markings. After the sugar was loaded into the car, Garry together with Incardone drove it to the vicinity of 148 Coburn Avenue, Worcester, Massachusetts, where the car was parked. Sometime later, the car with its contents was driven into the yard to the rear of 148 and between the premises 148 and 148½ Coburn Avenue. After remaining there about twenty-five minutes, the same two men drove in the direction of Boston.
"On August 2, 1961 a Pontiac car owned by Garry, and driven by Garry with Incardone as a passenger, was followed from Boston to Worcester. The car appeared heavily laden. The car was again driven into the driveway at 148 and 148½ Coburn Avenue to the rear of the yard and between the above-numbered houses.
"On August 7, 1961 at least six sixty-pound bags of Domino Sugar were loaded into the Pontiac owned by Garry. The loading was done by Garry and Incardone. The car traveled from Boston to Worcester, then to Holden, and returned with its contents and entered the driveway at 148 and 148½ Coburn Avenue, where the car was parked at the rear between the two houses.
"On August 11, 1961 new empty metal or tin cans were transferred from a car owned by Incardone to the Pontiac owned by Garry on Highland Street in Hyde Park. The Pontiac was driven by Garry with Incardone as a passenger to Worcester, and into the yard at 148 and 148½ Coburn Avenue to the rear and between the two numbered premises.
"On August 16, 1961 the Pontiac was observed. In the back seat bags of sugar were observed covered with a cloth or tarpaulin. A sixty-pound bag of sugar

"reason to believe" that an illicit still and other material used in the manufacture of non-tax paid liquors were being concealed on the premises of a dwelling house located at 148½ Coburn Avenue, Worcester. On an attached sheet signed by Mazaka were recited the "facts tending to establish the foregoing ground for issuance of a Search Warrant."

The first paragraph of the attached sheet contained the following:

"Based upon observations made by me, and based upon information received officially from other Inves-

was on the front seat. Garry was observed after loading the above-described sugar into the car placing a carton with various five-pound bags of sugar on the top of the tarpaulin. The car was then driven by Garry with Incardone as a passenger to Worcester together with its contents into the yard at 148 and 148½ Coburn Avenue to the rear of and between the two houses. About Midnight on the same night, the Pontiac driven by Garry with Incardone as a passenger was seen pulling up to the premises at 59 Highland Street, Hyde Park, where Garry lives. Garry opened the trunk of his car, and removed ten five-gallon cans therefrom, and placed them on the sidewalk. He then entered the house, and opened a door on the side. Incardone made five trips from the sidewalk to the side of the house carrying two five-gallon cans on each such trip. It appeared that the cans were filled. On each of these trips, Incardone passed the two cans to someone standing in the doorway. Immediately after the fifth such trip, Garry came out of the door and joined Incardone. They walked to the sidewalk, and talked for a few moments. Incardone then drove away, and Garry went into his home.

"On August 18, 1961 Investigators smelled an odor of fermenting mash on two occasions between 4:00 A.M. and 5:00 A.M. The first such odor was detected as they walked along the sidewalk in front of 148 Coburn Avenue, and the second such odor was detected from the side of 148 Coburn Avenue. At or about the same time, the Investigators heard certain metallic noises which cannot be further identified by source or sound.

"On August 24, 1961 the Pontiac was observed parked at a bowling alley and coffee shop off Route 9. The back of the car contained what appeared to be boxes covered by a cloth or tarpaulin, but which cannot be more specifically identified. On the front seat of the car was observed a sixty-pound bag of Revere Sugar. Garry and Incardone were observed in the restaurant or coffee shop eating. Later the car was seen driven to the rear of 148 between 148 and 148½ Coburn Avenue, Worcester.

"About Midnight the Pontiac was observed pulling up in front of Garry's house at 59 Highland Street, Hyde Park. Garry was driving, and Incardone was a passenger. They both got out of the car. Garry opened the trunk, and then entered his house. From the trunk of the car there was removed eleven five-gallon cans which appeared to be filled. Incardone made six trips to a door on the side of the house. He carried two five-gallon cans on each trip, except the sixth trip. On that trip he carried one can, having passed the others to somebody in the doorway, and on the last trip he entered the house. He remained there at least forty-five minutes, and was not observed to leave.

"On August 28, 1961 Garry drove Incardone in his car to Worcester. On Lake Ave. they met Giacomo Ventresca, who lives at 148½ Coburn Avenue, Worcester. Ventresca entered the car driven by Garry. The car was then driven into the yard to the rear of 148 and between 148 and 148½ Coburn Avenue. An observation was made that empty metal cans, five-gallon size, were being taken from the car owned by Garry, and brought into the premises at 148½ Coburn Avenue, which was occupied by Ventresca. Later, new cans similar in size, shape and appearance were observed being placed into the trunk of Garry's car while parked at the rear of 148 and in front of 148½ Coburn Avenue. The manner in which the cans were handled, and the sounds which were heard during the handling of these cans, were consistent with that of cans containing liquid.

"On August 30, 1961, at about 4:00 A.M., an odor of fermenting mash was detected while Investigators were walking on the sidewalk in front of 148 Coburn Avenue. At the same time, they heard sounds similar to that of a motor or a pump coming from the direction of 148½ Coburn Avenue.

"The foregoing information is based upon personal knowledge and information which has been obtained from Investigators of the Alcohol and Tobacco Tax Division, Internal Revenue Service, who have been assigned to this investigation.

(s) WALTER A. MAZAKA"

tigators attached to the Alcohol and Tobacco Tax Division assigned to this investigation, and reports orally made to me describing the results of their observations and investigation, this request for the issuance of a search warrant is made."

There followed eleven paragraphs of stated facts, nine of which detailed the activities of two men alleged to have been seen riding around in a 1961 Pontiac automobile and making seven individual deliveries of sugar and five-gallon cans to the dwelling house at 148½ Coburn Avenue, Worcester. Two of the paragraphs recited that on three separate occasions "Investigators" smelled an odor of fermenting mash in the immediate vicinity of the suspected dwelling.

The final paragraph of the attached sheet comprised this statement:

"The foregoing information is based upon personal knowledge and information which has been obtained from Investigators of the Alcohol and Tobacco Tax Division, Internal Revenue Service, who have been assigned to this investigation."

The affidavit failed to clearly indicate which of the facts alleged therein were hearsay or which were within the affiant's own knowledge. Although the affiant claims part of the information to be based upon "personal knowledge and information," it is stated that such "personal knowledge and information" was obtained from other Investigators.

■ The finding of probable cause as the basis for issuance of a search warrant is made by the Commissioner from the facts stated in the affidavit when that is the only evidence presented. Siden v. United States, 9 F.2d 241 (8th Cir. 1925). Such a duty cannot be delegated to the accuser. United States v. Harnich, 289 F. 256 (D.Conn.1922). Limited to the four corners of the affidavit, there was no way for the Commissioner to determine how much of the factual recitation was based on hearsay and how much was based on personal knowledge of the affiant. It could well be that none of the essential facts set forth in the affidavit were actually witnessed or established by the affiant. The Commissioner could only conclude that the entire affidavit was based on hearsay.

That is not to say that an affidavit dependent upon hearsay could not support issuance of a search warrant. The Supreme Court in Jones v. United States, supra, 362 U.S. at 269, 80 S.Ct. at 735, 4 L.Ed.2d 697, has succinctly stated the law in this respect:

"The question here is whether an affidavit which sets out personal observations relating to the existence of cause to search is to be deemed insufficient by virtue of the fact that it sets out not the affiant's observations but those of another. An affidavit is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented."

In Jones, the source of the hearsay, the informant, had direct knowledge himself of the possession of contraband articles by the suspect. He was deemed worthy of credence because he had previously given accurate information, his story was corroborated by other sources of information, and the suspect was known to the police as a narcotics user. The Court said 362 U.S. at 271, 80 S.Ct. at 736, 4 L.Ed. 2d 697:

"Thus we may assume that [the affiant] Didone had the day before been told, by one who claimed to have bought narcotics there, that petitioner was selling narcotics in the apartment. *Had that been all, it might not have been enough;* but Didone swore to a basis for accepting the informant's story." (Emphasis supplied).

The Court then went on to recite the further elements listed above, the sum total of which added up to substantial basis for crediting the hearsay.

Where the hearsay evidence has been personally observed by federal officers and communicated directly to the affiant, courts have found a substantial basis for

crediting the hearsay. In United States v. McCormick, 309 F.2d 367 (7th Cir. 1962), cert. den., 372 U.S. 911, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963)—a case the government contends "appears to be on all fours" with the instant case—the affiant had no personal knowledge of the averments in the affidavit, but each factual statement was prefaced by the declaration that the F.B.I. agents from whom the information was received were "present" and "observed" each described event as it occurred. In Giacona v. United States, 257 F.2d 450 (5th Cir.), cert. den., 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958), the affiant was without personal knowledge but identified his informant as one W. T. Finley of the Federal Bureau of Narcotics who had personally observed the narcotics hidden under the building to be searched.

But the holdings in the aforementioned cases are inapplicable to the facts of this case. With the exception of two paragraphs in the factual recitation alleging that unidentified "Investigators" smelled the odor of fermenting mash in the vicinity of the suspected dwelling, all we learn from Mazaka's affidavit is that the investigators received their information through "investigation."

Thus, the affidavit leaves as a complete mystery the manner in which the Investigators discovered their information. There is no indication whatsoever that any of the evidence gathered through the investigation was based upon the personal knowledge or observation of the Investigators. As a consequence there arises doubt that such information was first-hand to the Investigators. The type of fact-finding activities that can qualify under the term "investigation" are numberless. Investigations can, and frequently do, include the interrogation of witnesses, the receipt of information from informants, the receipt of telephone tips, the checking of files and records, etc. We would have in such a case, not a hearsay affidavit alone, but the distinct possibility of hearsay-upon-hearsay.

■ Hearsay information received from an informant may be used in an af-fidavit to secure a search or arrest warrant only when the informant is shown to be "trustworthy," Monnette v. United States, 299 F.2d 847 (5th Cir. 1962), or "reliable," Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In United States v. Pearce, 275 F.2d 318 (7th Cir. 1960), it was held that an affidavit based on hearsay relayed from one federal agent to another was insufficient. The affiant, an F.B.I. agent, had received his information from his superior, who in turn had received it from an F.B.I. agent in Seattle, who in turn had received it from a reliable informer. The court pointed out, therefore, that the statement in the affidavit that the affiant obtained the information from "a source which in the past has proved reliable" was obviously false. Similarly here, the affiant, Mazaka, could not truthfully vouch for the reliability or trustworthiness of the sources of information that might have been used by the Investigators. The substantial basis for crediting the hearsay found in Jones is nowhere apparent in this case.

■■ Because we are unable to determine from Mazaka's affidavit which of the statements therein are based on his own personal knowledge, which are the result of hearsay, and whether such hearsay is direct or not, we hold that the affidavit is insufficient to support the issuance of a search warrant and the search and seizure made pursuant thereto were unlawful and in violation of the constitutional rights of the defendant. See DiBella v. United States, 284 F.2d 897 (2d Cir. 1960), rev'd on procedural grounds, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). It follows that the evidence obtained as a result of such search should have been suppressed.

■ If hearsay evidence is to be relied upon in the preparation of an af-fidavit for a search warrant, the officer or attorney preparing such an affidavit should keep in mind that hearsay statements are only as credible as their source and only as strong as their corroboration. And where the source of the information

is in doubt and the corroboration by the affiant is unclear, the affidavit is insufficient.

*Judgment will be entered vacating the judgment of the district court, setting aside the verdict, and remanding the case for a new trial consistent with this opinion.*

ALDRICH, Circuit Judge (concurring).

This is a case of general importance. As a matter of interpretation I cannot agree with the first paragraph of Judge WOODBURY'S dissent. While I do agree with the first sentence of the second paragraph, it does not lead me to his result. The government's obligation under the Fourth Amendment to justify the issuance of a warrant is far from a pro forma matter. Marron v. United States, 1927, 275 U.S. 192, 195, 48 S.Ct. 74, 72 L.Ed. 231. This is illustrated by the undisputed rule that deficiencies in its prima facie showing are not remedied by the circumstance that subsequent events prove it was right after all. Byars v. United States, 1927, 273 U.S. 28, 47 S. Ct. 248, 71 L.Ed. 520. I believe it would be bad practice, down-grade the government's obligation, and lead, at best, to difficult performance of their duties by United States Commissioners, if the government were permitted to cart in a barrow-load of what is hopefully pay dirt and leave it to the commissioner, or ultimately the court, to pan out a possible nugget. In this case out of three and a half printed pages only the one sentence referred to by Judge Woodbury regarding odor is affirmatively identified as being to the personal observation of a government investigator, and even he is not necessarily the affiant. I believe the initial duty should be upon the government to evidence what is reliable and why, and not to introduce a hodge-podge under some general formalistic coverall.

Such a principle is peculiarly appropriate here because if a warrant is to be predicated primarily upon an odor, it is highly desirable that proper weighing may be made of the attendant circumstances. Cf. Johnson v. United States, 1948, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436.

WOODBURY, Chief Judge, (dissenting).

In the light of the first and more particularly of the final paragraphs of the sheet attached to Mazaka's affidavit, quoted at length in footnote 2 of the opinion of the court, I would read the statements of fact contained therein as based upon "observations" made either by the affiant himself or by other Investigators of the Alcohol and Tobacco Tax Division of the Internal Revenue Service. Since knowledge obtained from other federal law enforcement agents, though hearsay, has sufficient verification to support the issuance of a search warrant under the rule of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), see United States v. McCormick, 309 F.2d 367 (C.A.7, 1962), cert. den. 372 U.S. 911, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963), it can make no difference which specific "observations" were made by the affiant himself and which were made by other Investigators and reported in line of duty to the affiant.

But, regardless of the foregoing, the allegations of the detection of the odor of fermenting mash emanating from Ventresca's house on three occasions, twice between four and five o'clock on the morning of August 18, 1961, and once at about four o'clock on the morning of August 30, 1961, are clear allegations of actual observations made by Investigators themselves and not observations relayed to them by someone else whose identity does not appear. These allegations read in conjunction with the others impress me as enough to warrant issuance of the search warrant by the Commissioner. See United States v. Parham, 17 F.R.D. 301 (E.D.Mich.1955). I would affirm.