**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Milton James ROTH, Defendant-
Appellant.**

No. 16173.

United States Court of Appeals
Seventh Circuit.

Nov. 20, 1967.

Rehearing Denied Jan. 5, 1968.

**508**

Max Cohen, Gary, Ind., for appellant.

Alfred W. Moellering, U. S. Atty., Joseph F. Eichhorn, Asst. U. S. Atty., Fort Wayne, Ind., for appellee.

Before HASTINGS, Chief Judge, and KILEY, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Milton James Roth appeals from a judgment of conviction pursuant to a jury verdict of guilty. The indictment charged that he knowingly had in his possession goods stolen from a shipment in interstate commerce in violation of 18 U.S.C. § 659. The only question in this appeal concerns the propriety of the district court's pre-trial ruling denying Roth's motion to suppress evidence seized pursuant to the execution of a search warrant.

On October 27, 1965 approximately three thousand Hamilton Beach blenders were placed on a truck in Chicago destined for Philadelphia. During the evening of October 29, the loaded truck disappeared and was found empty the next afternoon on the far south side of Chicago, several miles from Hammond, Indiana. William Morrison, a Special Agent of the Federal Bureau of Investigation, obtained a warrant from a judge of the Lake County, Indiana Superior Court on November 1. Pursuant to that warrant, agents searched a garage-type, warehouse building adjacent to and a part of Day-Lite Foods, Hammond, Indiana, occupied by the defendant, and found the stolen blenders.

An affidavit sworn to by Agent Morrison was the only matter presented to the state court judge who issued the search warrant. After reciting the preliminary facts detailing the occurrence of the theft and the location of the building occupied by the defendant, the affidavit set forth two grounds purporting to establish probable cause that the blenders were contained on the defendant's premises.[1] The

---

1. The pertinent text of Agent Morrison's affidavit follows:

1. That the affiant is employed as a Special Agent of the Federal Bureau of Investigation, a branch of the United States Department of Justice, and that affiant has continuously held such petition as a Special Agent for the past 11 years.

2. That the affiant has reason to believe, and does believe, that there is now being concealed certain property, to-wit: a large number, believed to be 3,000, Hamilton Beach Electric Blenders, which electric blenders were part of an interstate shipment from C. and A. Terminal Company, Chicago, Illinois, consigned to Hamilton Beach, c/o Terminal Warehouse, Philadelphia, Pennsylvania, under B. and P. Motor Express Pro No. 266419, and which were stolen on or about October 29, 1965, from B. and P. Motor Express Trailer No. 784, which was parked in the yards of B. and P. Motor Express, Inc., Chicago, Illinois, and that the said electric blenders are now being kept at the following-described premises: In the building located at 6406 Calumet Ave-

nue, Hammond, Indiana, and known as Day Lite Foods, which building is an "L" shaped structure made up of the main store building and an attached garage-type warehouse which extends from the rear portion of the building at a right angle, and in a southerly direction, along a certain public alley, which alley runs in a northerly-southerly direction behind said address, and parallel to Calumet Avenue.

3. That the information upon which the affiant bases his belief that said Hamilton Beach Electric Blenders are on said premises mentioned above is as follows:

(a) That on October 31, 1965, your affiant received information from a confidential informant that the said electric blenders were contained in the building above-described. That said informant has in the past furnished the affiant with reliable and accurate information and that he knows the informant to be a reliable source.

(b) That your affiant has been informed by Thomas Noonan, a Special Agent of the Federal Bureau of Investigation, that Agent Noonan personally observed a

first was a statement that the affiant received information from a confidential informant on October 31, 1965 to the effect that "said electric blenders" were on the defendant's premises and that the informant had in the past furnished accurate information and was a reliable source. The second was a statement that the affiant had been informed of the observation of another F.B.I. agent who had personally seen "a large number of boxes bearing the name 'Hamilton Beach' " through a window in the warehouse.

After he was arrested and before trial, the defendant moved to suppress the evidence obtained pursuant to the execution of the warrant. The motion was denied by the district court.

 Initially, we must determine the effect to be given to matters brought out at a hearing on a motion to suppress in assessing the sufficiency of an affidavit for a search warrant. When a court reviews whether an issuing magistrate has properly granted a search or an arrest warrant, the Supreme Court has cautioned, "the issue of probable cause * * * [has] to be determined by the * * * [magistrate], and an adequate basis for such a finding * * * [has] to appear on the face of the complaint." Giordenello v. United States, 357 U.S. 480, 487, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958).[2] If an affidavit is the only matter presented to the issuing magistrate, as in this case, the warrant must stand or fall solely on the contents of the affidavit. What is subsequently adduced at a hearing on a motion to suppress, therefore, cannot be used by the trial court to augment an otherwise defective affidavit. But if the hearing discloses matters which discredit or impeach the assertions in an affidavit, these must be considered by the trial court in determining whether probable cause in fact existed.

 At the hearing on the motion to suppress in the instant case, testimony was elicited which exposed a fatal flaw in the affidavit. The affiant, Morrison, testified that the confidential informant told him, "there was a load of Hamilton Beach *products* that were stored in a grocery store out on the 6500 block of Calumet Avenue in Hammond, Indiana." In contrast, Morrison's affidavit stated that the informant told him that "the *said electric blenders* [the stolen items]" were on the defendant's premises. (Emphases added.) When Morrison's testimony is compared with his statement in the affidavit, a contradiction is disclosed, glaring enough to require the trial court to find the affidavit insufficient as a matter of law.[3]

Other defects permeate the affidavit in addition to the contradiction. The statement therein that a confidential informant told Agent Morrison that "said electric blenders were contained" in the defendant's premises is at best hearsay. In all probability, the statement reflects hearsay on hearsay, the informant having received the information from some-

---

large number of boxes bearing the name "Hamilton Beach" in the premises above-described, and that such boxes were observed through a window by Agent Noonan while he was standing in a public parking lot adjacent to the said building.

(c) That the said B. and P. Motor Express Trailer No. 784 was found empty and abandoned at 103rd Street and Dan Ryan Expressway, in Chicago, Illinois, in the late afternoon of October 30, 1965.

2. *Giordenello* dealt with the sufficiency of an affidavit for the issuance of an arrest warrant. The Supreme Court stated, however, "The language of the Fourth Amendment, * * * of course applies to ar-

rest as well as search warrants." 357 U.S. at 485, 486, 78 S.Ct. at 1250. In a subsequent case, Aguilar v. State of Texas, 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Court cited *Giordenello* with respect to the sufficiency of an affidavit for the issuance of a search warrant.

3. If Morrison's testimony is the correct version of the information given by the informant, the term "products" could refer to any of the full range of items manufactured by Hamilton Beach rather than specifically to the stolen blenders. See p. 7 infra.

one else rather than by means of his own observation. Agent Morrison's testimony at the hearing supports this conclusion.[4]

The Supreme Court has held that an affidavit "is not to be deemed insufficient" on the ground that it contains hearsay statements "so long as a substantial basis for crediting the hearsay is presented." Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960). There the affidavit was held to be sufficient in part because the hearsay statements related the personal observations of the informant. Subsequent Supreme Court cases have elaborated upon the nature and extent of the corroboration necessary to sustain a search warrant issued pursuant to an affidavit containing hearsay. In Aguilar v. State of Texas, 378 U.S. 108, 109, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the affiants, two local police officers, stated that they had received "reliable information from a credible person and do believe" the defendant possessed narcotics. Neither the police officers nor the informant had personally observed the facts recited in the affidavit. The Supreme Court held the affidavit insufficient to establish probable cause, stating:

> Although an affidavit may be based on hearsay information and need not reflect the direct personal observation of the affiant, * * * the magistrate must be informed of some of the *underlying circumstances* from which the informant concluded that the narcotics were where he claimed they were, and some of the *underlying circumstances* from which the officer concluded that the informant, * * * was "credible" or his information "reliable." 378 U.S. at 114, 84 S.Ct. at 1514. (Emphases added.)

In accordance with the teachings of *Jones* and *Aguilar*, if Morrison's affidavit contained only the statement of what the informant related to him without the support of any "underlying circumstances," there would be no adequate basis from which the magistrate could properly have concluded that probable cause existed. Despite the additional averment in the affidavit that the informant had "in the past furnished the affiant with reliable and accurate information and that he knows the informant to be a reliable source," that statement in itself is too barren either to credit or to corroborate the hearsay statements of the informant. Irrespective of the informant's reliability, he in turn may have received his information from someone wholly unreliable. Consequently, the fact that the agent vouched for the credibility or reliability of the informant cannot reach the crucial question posed by the

---

4. The relevant testimony of Agent Morrison is as follows:

Q. Did you ask him from where or how he had obtained this information?
A. No, sir.
Q. Did you ask him whether or not he had seen the items in the store that he mentioned to you?
A. To the best of my knowledge, I don't recall asking him that.
Q. So you have no knowledge from him or from anyone else that he personally observed these items in the store, do you?
A. No, sir.
Q. You don't know whether or not he obtained that information from somebody else who may have observed it, do you?
A. No, sir, I don't.
Q. Has this informant in the past supplied you with information?
A. Yes, sir, he has.
Q. On how many occasions?
A. On several occasions.
Q. How many is several? Is it more than three?
A. Yes, sir.
Q. Now, this informant—and again I am not asking you to reveal the identity of the informant—obtains information from other so-called underworld sources and then transmits it to you, doesn't he? Isn't this the way he works most of the time?
A. Well, I would say in some cases, yes, and in some cases—we are talking about the past information, is that correct, sir?
Q. Yes.
A. I would say in some cases he did hear this from other individuals and a couple of cases he had personal knowledge of the information.

hearsay on hearsay situation present in this case. For the reliability of both the anonymous hearsay source and the information he imparted to the informant is totally lacking.

■■ We believe that an affidavit containing "inherently defective hearsay on hearsay" (that is, hearsay on hearsay as to which there is absent any indication of the reliability of the anonymous hearsay source) can withstand attack only if the supporting circumstances related therein are sufficient in themselves to establish probable cause.[5] Morrison's statement in the affidavit that he was informed by Agent Noonan of his own observation of "boxes bearing the name 'Hamilton Beach'" on the defendant's premises fails to satisfy this requirement.

The Supreme Court recently considered the sufficiency of an affidavit reciting the observations of the affiant's fellow officers in Ventresca v. United States, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). That decision upheld the validity of a search warrant issued on the presentation of an affidavit in which the affiant based his belief that an illegal distillery was in operation on his own observations and "upon information received officially from other Investigators * * * assigned to this investigation, and reports orally made to me describing the results of their observations and investigations, * * *." 380 U.S. at 103, 104, 85 S.Ct. at 743. Seven instances of the agents' observations of suspicious, incriminating activities were described.

■ A significant difference is apparent between the affidavit in Ventresca which relied on the observations of fellow officers (and which contained "not merely 'some of the underlying circumstances' * * * but a good many of them" 380 U.S. at 109, 85 S.Ct. at 746) and Morrison's affidavit which relied on the observations of Noonan. The latter lacked the specificity found adequate in Ventresca. Neither the date on which Noonan observed the defendant's premises nor the type of Hamilton Beach products he observed was recited in the affidavit. Both of these omissions are highly critical in view of the nature of the premises, a "garage-type warehouse," and the type of merchandise stolen, a product that is mass produced by a nationwide manufacturer of a variety of household electrical appliances. Without detailing the date of Noonan's observation and what he specifically saw, Morrison's statement might have described any of a large number of warehouses that had received a shipment of Hamilton Beach products prior to or contemporaneously with the theft of the blenders in question.[6] The statement, therefore, is too imprecise to establish probable cause that what Noonan observed on the defendant's premises was the stolen blenders.

■ Although we are mindful of the Supreme Court's admonition in Ventresca that "affidavits for search warrants, * * * must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion," we may not overlook the equally important charge that sufficient specificity of an affidavit for a search warrant "is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police." 380 U.S. at 108, 109, 85 S.Ct. at 746. We feel constrained, in light of the reasons heretofore outlined, to hold that the district court erred

---

5. Thus if an affidavit, unlike Morrison's, indicated the highly reliable nature not only of the confidential informant but also of his anonymous hearsay source, a different problem would be posed. In such a situation, the quantum of "underlying circumstances" necessary to sustain the affidavit would decrease as the indicia of reliability of the anonymous hearsay source increased.

6. Although we previously held that an affidavit setting forth the observations of fellow F.B.I. agents was sufficient to sustain the issuance of a search warrant, United States v. McCormick, 309 F.2d 367 (7th Cir. 1962), cert. denied, 372 U. S. 911, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963), the affidavit there, like the one in Ventresca, was more specific than Morrison's affidavit in this case.

in refusing to grant the defendant's motion to suppress the evidence obtained as a result of the search.

The judgment of the district court is reversed and the case is remanded for a new trial.

HASTINGS, Chief Judge (concurring).

I concur in the result reached in this case.