**Anthony G. SAVILLE, Petitioner, Appellant,**

**v.**

**Daniel A. O'BRIEN, Superintendent of Massachusetts Correctional Institution at Warwick, Massachusetts, Respondent, Appellee.**

**No. 7372.**

United States Court of Appeals First Circuit.

Dec. 17, 1969.

Rehearing Denied Jan. 13, 1970.

John G. S. Flym, Boston, Mass., for appellant.

Lawrence P. Cohen, Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., John Wall, Asst. Atty. Gen., Chief, Criminal Division, Edward W. Hanley III, Asst. Atty. Gen., Matthew J. Ryan, Jr., Dist. Atty., Western District, and Leonard E. Gibbons, Asst. Dist. Atty., were on brief, for appellee.

Before ALDRICH, Chief Judge, WOODBURY,* Senior Circuit Judge, and McENTEE, Circuit Judge.

McENTEE, Circuit Judge.

Petitioner, Anthony G. Saville, a state prisoner, was convicted in the Superior Court of Massachusetts on two indictments charging him with possession of counterfeit bank bills and possession of counterfeiting equipment in violation of M.G.L. (Ter. ed.) ch. 267, §§ 9, 13. On appeal, the Supreme Judicial Court upheld the convictions, affirming the trial court's denial of petitioner's motion to suppress evidence obtained by a search made under a warrant allegedly issued without probable cause.[1] Petitioner then sought a writ of habeas corpus. After an evidentiary hearing, the district court denied the writ. On Saville's request for a certificate of probable cause we agreed to hear his appeal but only on the question of whether there was probable cause for the issuance of the search warrant.

The warrant in question, issued on July 4, 1966, by one Collins, clerk of the Springfield district court, was based on the affidavit of Sergeant Desrosiers of the West Springfield Police. The affidavit, which was typed by Collins from what Desrosiers told him, reads as follows:

"I have information based upon * * * statements made to me by Detective Richard Hurley of the Connecticut State Police that John J. Parisi has stated that Anthony Saville of 38 Burford Avenue West Springfield gave said Parisi 150 counterfeir (sic) ten dollar bills, this occurring at the print shop of said Saville located at 212 Bosworth Street in West Springfield yesterday afternoon."

---

* By designation.

1. Commonwealth v. Saville, 353 Mass. 458, 233 N.E.2d 9 (1968).

Two other affidavits, submitted by Desrosiers to the same court clerk earlier the same day in support of applications for warrants to search Parisi's home and place of employment, revealed that he had been arrested in Connecticut the previous day on charges of uttering counterfeit money and that when arrested he had in his possession forty bogus ten dollar bills.[2]

On the basis of the information contained in the three affidavits,[3] the clerk issued a warrant to search petitioner's print shop and evidence obtained in the search was introduced against him at trial.[4]

In Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 729, 4 L.Ed.2d 697 (1960), the Supreme Court held that hearsay may be the basis for the issuance of a search warrant "so long as [there is] a substantial basis for crediting the hearsay." This holding was amplified in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). There the Court stated that where an affidavit is based on hearsay, the magistrate must be informed of some of the underlying circumstances from which the officer concluded that the informant was credible and his information reliable. The rule is the same whether the identity of the informant is disclosed or not. The sound policy behind this rule is to insure that a neutral officer is afforded the opportunity to exercise his independent judgment as to whether certain information in the hands of the police is sufficient to justify an invasion of privacy.

■ The affidavit in this case fails to satisfy the requirements of Aguilar.[5] It said only that Detective Hurley had told Desrosiers that Parisi "had stated" that Saville gave him the counterfeit money at his print shop. Thus, Hurley may have received a call from someone who claimed to have overheard the remark at the neighborhood bar, see Spinelli v. United States, 393 U.S. 410, 417, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); a cellmate of Parisi's could have furnished the information to the police; or the hearsay chain could have comprised only police officers. The affidavit simply did not reveal when or to whom the statement had been made.

■ As we have indicated, a basic policy of the Fourth Amendment is that the judgment of an independent magistrate should be interposed between the police and a suspect before an invasion of privacy is countenanced. See, e. g., Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). The affidavit in the case at bar prevents the making of such a judgment by providing insufficient information for the purpose. Accordingly, we hold that the affidavit was insufficient on its face.

The danger presented by such a document is not hypothetical. Although we base this decision solely on the insufficiency of the warrant, we note that the evidentiary hearing below revealed that

---

2. These two affidavits read, in part, as follows: "I have information based upon * * * statements made to me by Detective Richard Hurley of the Connecticut State Police, Westbrook Barracks, that on July 3, 1966 one John P. Parisi of 38 Burford Avenue, West Springfield, was arrested in Old Lyme, Connecticut, on ten counts of uttering counterfeit ten dollar bills and that at the time of his arrest the said Parisi had in his possession forty counterfeit ten dollar bills all bearing serial # A–13705685–D. The said Parisi has a prior record for uttering forged checks in this Commonwealth."

3. During oral argument counsel for petitioner conceded that the court could consider all three affidavits on the theory that they added nothing to the Commonwealth's case.

4. Among the articles seized were a photostat copying machine; sheets of stock paper; a negative of the reverse side of a $10 bill; two pieces of cloth with printer's ink on them; three pieces of burnt paper stock, and other articles containing printer's ink. No counterfeit money was found.

5. Where a magistrate has only the affidavits before him, the warrant must be judged on their contents. Aguilar v. Texas, supra at 109 n. 1, 84 S.Ct. 1509.

Detective Hurley had come by his information not from Parisi, but from an undisclosed third party, and that Desrosiers had obtained his information at least in part from the same unidentified informant. Moreover, since Desrosiers did not know to whom Parisi had spoken, nor through how many persons his information had passed before reaching Hurley, even Desrosiers could not have known whether the information was reliable or the informant credible.

This decision is consistent with *Spinelli*. There the Supreme Court was faced with an affidavit which stated, among other things, that the F.B.I. had been informed by a confidential, reliable informant that Spinelli was accepting wagers. In rejecting this statement as insufficient under *Aguilar's* dual standard, the Court observed that there was no indication how the informant came by this information. The affidavit did not say that he had personal knowledge nor, assuming that he had obtained the information indirectly, why his source was reliable. "It is clear," the Court concluded, "that a Commissioner could not credit it without abdicating his constitutional function." *Spinelli, supra* at 416, 89 S.Ct. at 589.

Nor is it significant that one of the informants in the hearsay chain is named in the affidavit:

"Irrespective of the informant's reliablity, he in turn may have received his information from someone wholly unreliable. Consequently, the fact that the agent vouched for the credibility or reliability of the informant cannot reach the crucial question posed by the hearsay on hearsay situation present in this case. For the reliability of both the anonymous hearsay source and the information he imparted to the informant is totally lacking." *United States v. Roth*, 391 F.2d 507, 510–511 (7th Cir. 1967).

Informant Hurley's source was in fact totally unreliable, because it was totally unknown.

United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), does not require a different result. In that case the Court defined the standard by which a reviewing court should interpret affidavits which are made in support of warrants. It held that,

"where [the] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Ventresca, supra* at 109, 85 S.Ct. at 746.

In that case a search warrant was obtained based on the affiant's belief that an illegal distillery was being operated in defendant's home. His information came both from personal observations and "information received from other Investigators * * * assigned to this investigation." In upholding the validity of the affidavit, the Court held that it could not conclude that the whole warrant was based on hearsay because the affiant swore to at least partial personal observation. As to the information not based on personal observation, the Court observed that, read as a whole, the detailed observations recounted in the affidavit could not be fairly regarded as having come from other than official sources, and that observations made by fellow officers engaged in a common investigation are reliable.

The affidavit in the instant case is readily distinguishable for there is no claim that the affiant had personal knowledge and there is no indication that the information he imparted to the clerk came from official, viz., reliable, sources. Although Parisi, the imputed source of the information, was known, for reasons already stated the authenticity of the statement attributed to him could not be verified. To read this affidavit as anything but an open ended document giving no clue to the actual source of Detective Hurley's information, would go far beyond a "commonsense interpretation."

As we said in Rosencranz v. United States, 356 F.2d 310, 317 (1st Cir. 1966):

"It is one thing to expect the magistrate to give a commonsense reading to facts set forth and to draw inferences from them. It is quite another thing to expect the magistrate to reach for external facts and to build inference upon inference in order to create a reasonable basis for his belief that a crime is presently being committed."

■■ We next consider the question of whether the error was harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The standard that must be applied is whether it was harmless beyond a reasonable doubt. *Chapman, supra* at 24, 87 S.Ct. 824. With regard to the search there was extensive testimony by two policemen and two experts. A state trooper described how he, in the company of three other policemen, searched the Saville premises and found a photographic negative of a ten dollar bill in a rubbish barrel behind the print shop. Desrosiers testified as to how he assisted in finding the negative, and also described in detail all the equipment that had been removed from the print shop in execution of the warrant. One expert witness testified that a lithograph machine produced by his company and owned by petitioner was capable of producing counterfeit money. He also gave his opinion regarding the photographic process that would have to be used to produce counterfeit money, stated that a vacuum frame could be used to make a counterfeit plate, and identified one of the Commonwealth's exhibits as a vacuum frame. The other expert was a special agent of the United States Secret Service who testified concerning the photographic negative seized at the shop, and stated that the bills in evidence, seized from Parisi, were counterfeit. By the *Chapman* standard, it cannot be gainsaid that the error complained of did contribute to petitioner's conviction on the charge of possessing counterfeiting equipment.

But petitioner was also convicted on the more serious charge of "unlawful possession of bank bills with intent to utter." If his conviction on this count was not infected by the constitutional error, petitioner has not been prejudiced and cannot gain his freedom. Applying the *Chapman* test, however, we think that petitioner's conviction on this charge cannot stand either. The state's case against him rested on Parisi's testimony. But we are not willing to speculate that the accumulated testimony describing the search, and the evidence seized in its wake, did not influence the jury's determination of guilt on this charge also. Our decision, of course, does not prevent the state from retrying the petitioner, within a reasonable time, without relying on the tainted evidence.

Judgment will be entered vacating the judgment of the district court and remanding the case to that court for further proceedings consistent with this opinion.

## ON PETITION FOR REHEARING

### PER CURIAM.

■ Appellee's petition for rehearing, in addition to taking the inexcusable liberty of stating, three times, that we decided the case on a ground that we specifically said we did not, exhibits a misconception that we think calls for a substantive reply. Appellee concedes that there was a "possibility" that the essential affidavit was based on hearsay, but says that the magistrate was warranted in concluding otherwise, and that it was "hypertechnical" and "speculative" for us to say he could not. What appellee forgets is that the issuance of a warrant requires a showing of probable cause. This means that the moving party has a burden of proof. If an affidavit is blind as to whether it is based on hearsay or not, that burden is not met. Any other rule would permit the party seeking a warrant, and having only hearsay, to leave the affidavit blind, and hope for the best. It is not to be forgotten that if the information is reliable, or based upon other than hearsay, it is very easy

for the party who is seeking the warrant, and who has complete control over what he chooses to produce, to say so.

The petition for rehearing is denied.