528 P.2d 641
STATE of Arizona, Appellee,
v.
William H. RICHARDSON, Appellant.
No. 2 CA–CR 387.

Court of Appeals of Arizona,
Division 2.
Nov. 27, 1974.
Rehearing Denied Dec. 31, 1974.
Review Denied Jan. 28, 1975.

**450**

N. Warner Lee, Atty. Gen., Gary K. Nelson, Former Atty. Gen., by R. Wayne Ford and Georgia Butcher, Asst. Attys. Gen., Phoenix, for appellee.

Rabinovitz, Minker, Hirsch & Dix, P. C. by S. Jeffrey Minker, Tucson, for appellant.

## OPINION

HOWARD, Judge.

Appellant was indicted and charged with unlawful possession of marijuana and unlawful possession of dangerous drugs after a search executed pursuant to a search warrant disclosed such contraband in his possession. The court below found appellant guilty of the former crime. In a motion to suppress, in special action proceedings, and in this appeal, appellant contends that the affidavit for the search warrant failed to allege probable cause. On January 9, 1973, the challenged affidavit was presented, and the search warrant was issued. Because of its importance, we reproduce the affidavit below and divide it into five parts for ease in analysis.

### A

"Your affiant, A. Carrillo has since 26 September 1972, conducted an investigation of the activities of WILLIAM RICHARDSON at 5951 East Oak Street, Tucson. Your affiant received information from Captain LaPonsie, that a confidential citizen informant had advised him of the unusual activities at this residence. On one occasion a large U-Haul truck came to the residence and persons were observed taking furniture from the residence and placing it into the U-Haul truck. The truck left the residence and returned two (2) days later. At this time persons were observed unloading what appeared to be the same furniture from the U-Haul truck and taking it into the residence. On a second occasion, a pickup truck bearing Arizona License WN-2443, was observed at the residence. Large plastic sacks, of the garbage variety, were seen being removed from the truck and being taken into the residence. This truck is registered to PAUL E. DOTY who is known to your affiant as a trafficker in large quantities of marijuana,

### B

while conducting various surveillances at the residence, your affiant has observed an unusual quantity of vehicle traffic with over sixty (60) vehicles being recorded. Other persons known to your affiant to traffic in large quantities of marijuana, have been observed at the residence.

### C

In the past week your affiant, has become aware of an increase in vehicle traffic to the residence with as many as twelve (12) vehicles being at the residence at one time.

### D

On 9 January 1973, your affiant was advised by Captain LaPonsie that there were unusual activities at the residence. A red pickup truck, Arizona License NB–1249 was observed going to the Residence. Packages approximately five (5) inches wide, three (3) inches deep, and ten (10) inches long were observed being taken from the cab of the truck into the residence. Also observed at the residence was the Gold Mustang Mach I with black stripes, parked in the front

yard. The spare tire was removed from the Mach I and taken into the residence. It was then brought back out to the vehicle and a tire removed from the vehicle and taken into the residence. After a time, this tire was brought out and placed on the vehicle, another tire was removed from the vehicle and taken into the residence. It is known to your affiant that large quantities of marijuana have been transported in the tires of vehicles and your affiant has had occasion to observe marijuana in tires on several occasions.

## E

Your affiant has also received information from a confidential reliable informant who has been in the residence and has talked with WILLIAM RICHARDSON. The confidential and reliable informant has advised your affiant that WILLIAM RICHARDSON is trafficking in large quantities of kilo bricks of marijuana and some cocaine. The facts tending to show that this informant is reliable are, the informant has in the past made two (2) controlled purchases of narcotics, the informant has given information on various narcotics traffickers to your affiant that through an independent investigation have proven to be true. The informant has given your affiant information which has resulted in the arrest of three (3) persons and seizures of large quantities of narcotics. At the present time, two (2) persons have been indicted by a Federal Grand Jury and are awaiting trial. The third person has been indicted by the Pima County Grand Jury and is awaiting trial. Because the informant is aware of the possibility of personal injury or great bodily harm if the informant's identity were revealed and because the usefullness of the affiant would be jeopardized, your affiant asks that identity be concealed because of the circumstances described above, your affiant believes that there is a useable quantity of marijuana in the residence and vehicle listed above.

Your affiant prays that a Search Warrant be issued."

■ The canvas upon which this constitutional picture is painted is that the evidence in the affidavit must be sufficient to support a disinterested judicial determination that there is probable cause at that time to issue a search warrant. Otherwise, the Fourth Amendment would be reduced to a nullity and people's homes, papers, and effects would only be secure at the whim of the police. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Yet, because of the preference which courts accord to searches pursuant to a warrant,

" . . . affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

■ The affidavit is not a hallmark of clarity, nor should it serve as a model for future police action. It may well be true that the facts stated in the affidavit would not support a legal search had no search warrant been obtained. However, recognizing the preference which is accorded to searches pursuant to a warrant, we do not feel that the affidavit failed to allege probable cause.

We focus our attention on part D of the affidavit because the other parts, by themselves, are inadequate. Appellant first attacks this section by claiming that the failure to identify Captain LaPonsie voids the affidavit. We cannot accept this argument. To accept it would require the hy-

per-technical reading condemned in *Ventresca,* supra. Appellant's second argument is that the affidavit fails to state whether LaPonsie received the information from an undisclosed informant or whether he observed the activity himself. For this argument, appellant relies on Saville v. O'Brien, 420 F.2d 347 (1st Cir. 1969), cert. den., 398 U.S. 938, 90 S.Ct. 1840, 26 L.Ed. 2d 270 (1970), a case which is inapplicable because the affidavit involved clearly revealed that the source of the information came from outside police channels. The affidavit in our case fairly lends itself to a reading that Captain LaPonsie actually saw the narrated unusual activities.

The same may be said for appellant's third argument contesting the sufficiency of part D. He claims that there is no indication when the unusual activities were seen, the only indication of time being when Captain LaPonsie relayed the information to the affiant. We cannot accept appellee's "bootstrap" argument that we should presume the information was timely because it is inter-related to the date of the affidavit. To do so would write out of existence the requirement that facts in the affidavit be recent.

█ Nevertheless, while the affidavit may be read as appellant suggests, we believe that it may also be read as stating that the activities occurred on January 9, 1973, the day the search warrant was issued. An affidavit for a search warrant need not prove criminal conduct beyond a reasonable doubt, but need merely show a probability of contemporaneous criminal conduct. Porter v. United States, 335 F.2d 602 (9th Cir. 1964), cert. den., 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965). Searches pursuant to a warrant are to be preferred. For these reasons, when, as in our case, two interpretations of an affidavit may be equally reasonable, we will not hold as a matter of law that the court below erred in finding the affidavit sufficient. Thus, part D alleges highly unusual conduct which provides probable cause to believe the contraband will be on the premises to be searched.

Affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.